UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA, : 24-CR-00019-NRM
:
:
: United States Courthouse
-against- : Brooklyn, New York
:
:
: Thursday, March 21, 2024
: 10:00 a.m.
JOSEPH GRUNWALD, :
:
Defendant. :
:
- - - - - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE NINA R. MORRISON
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Government: BREON PEACE, ESQ.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: VINCENT M. CHIAPPINI, ESQ.
Assistant United States Attorney

For the Defendant: FEDERAL DEFENDERS OF NEW YORK, INC.
One Pierrepont Plaza, 16th Floor
Brooklyn, New York 11201
BY: ALLEGRA W. GLASHAUSSER, ESQ.


Court Reporter: Nicole J. Sesta, RMR, CRR, RPR
Official Court Reporter
E-mail: NSestaRMR@gmail.com

Proceedings recorded by computerized stenography. Transcript
produced by Computer-aided Transcription.

THE COURTROOM DEPUTY: Criminal cause for a status conference, Docket No. 24-CR-19, United States of America versus Joseph Grunwald.

Counsel, please state your appearances for the record, starting with the government.

MR. CHIAPPINI: Good morning, Your Honor.

Vincent Chiappini for the United States.

THE COURT: Good morning.

MS. GLASHAUSSER: Good morning, Your Honor.

Allegra Glashausser for Mr. Grunwald. I want to note his parents are in the audience, as well as a federal defender social worker.

THE COURT: Good morning, Mr. Grunwald. I'm Nina Morrison and I'm the district judge presiding over your case. Good morning, Mr. and Mrs. Grunwald. It's good to see you.

So we are here for the first status conference before me in this matter. Let me hear from the parties on where things stand.

MR. CHIAPPINI: Good morning, Your Honor. So the defendant is charged with violating 18 U.S.C. Section 2422(b), the interstate coercion and enticement of a minor, as well as 18 U.S.C. 2260(a), the offense by a registered sex offender.

It relates to the 2023 sexual assault of a 14-year old boy. As alleged, the defendant contacted the child via Telegram, an encrypted online messaging application. He

induced the boy to send him a picture of his penis, he engaged in sexually charged conversations with him, and he repeatedly traveled to see the boy in the area in which he lived and went to school.

And then in approximately June of 2023, he in one of the visits to see the boy, he drove him to a dead end road and put his hands inside his pants and fondled his penis and testicles for several minutes.

He was arraigned on complaint on January 4, 2024 and he was arraigned on indictment on January 17, 2024. The government made its first production of discovery yesterday. That's where things stand.

THE COURT: Okay. Thank you. Anything from the defense beyond what has just been summarized by the government?

MS. GLASHAUSSER: Your Honor, we did receive discovery yesterday. I have started talking through some of these matters with the government. I would note that the book of what seems to be the relevant discovery is about 2,000 pages of text messages that are mostly in Yiddish. And so although I technically have this discovery, I cannot read it and it is also marked protected. So I'm also not allowed to provide it to Mr. Grunwald. I can look at it with him.

But that is kind of a significant roadblock to my being able to really review it. The government has indicated

that it is preparing a translation and will be able to give me a sense of the timeline when we might have it next week. But that's where we stand with that.

THE COURT: Just as a matter of practice, do you typically hire your own translators to review it? Do you rely on the government's translation? What do you anticipate is needed in terms of resources?

MS. GLASHAUSSER: That depends, Your Honor. I haven't had a Yiddish case where I really don't have any ability to even scan the documents to see which ones might be relevant. I've asked the government if there were particular ones that maybe they could point out to me as being relevant now.

In this instance, I think I would likely rely initially on the government's translation and get portions translated myself if it was deemed necessary. But right now, I'm not sure which ones say hello and which ones are the things that the government says are most related to the allegations. That's something we'd assess later on in the process.

THE COURT: Thank you. Obviously it's up to the government what part of your own work product and mental processes you want to flag for the defense. But in the interest of moving things along and conserving everyone's resources, to the extent those messages you think are

particularly important to making out the elements of the charged crime or violation, I think that would be helpful.

MR. CHIAPPINI:  Yes, Your Honor.

THE COURT:  And which law enforcement agencies were involved in the investigation or arrest in this case?

MR. CHIAPPINI:  The FBI, and we also have a task force officer from the Spring -- who works for the FBI from the Spring Valley Police Department, who is our only Yiddish speaking agent.  He's been involved in trial for the last several weeks, which is why I've had limited ability to contact him.  I'm hoping that he'll be free next week and we can identify some of those messages.

THE COURT:  Thank you.  So Mr. Chiappini, at this point, as you may know, this is where at a first status conference I give a standard *Brady* warning to all attorneys for the government who come before me.

I know that you received the Rule 5(f) order from Judge Merkl at arraignment, but since this is your first appearance before me in this case I just want to review with you the importance that I place on full compliance with *Brady* and review some specifics.

So this is your reminder of your obligation, not just to disclose potential *Brady* material that you personally know about, but also to inquire of all agents of the government, whether they are with the state or with the

federal government, who are members of the law enforcement team about all potentially favorable information relevant to guilt or punishment.

Timeliness is key. As you know, *Brady* is largely a trial right but it should be disclosed in time for the defense to make use of it. I do recognize that determining whether something is potentially material can be a close call. I urge you to err on the side of disclosure under both the New York State ethics rules, the government's attorneys admitted to the bar in New York, as well as *Brady*.

If you have any questions about materiality, or whether something should be disclosed, you can always present it to me in camera for a determination. Relatedly, as is noted in my individual rules, the defense, of course, is under no obligation to make any specific requests for *Brady* material. It's a self enforcing obligation.

But under *Bagley* and related cases there's a presumption of materiality that is higher if some specific information requested turns out to be favorable to the defense and is not disclosed.

Do you have any questions at all about those obligations?

MR. CHIAPPINI: I do not, Your Honor.

THE COURT: Thank you. So given the volume and complexity of discovery and the translation issues, I'm not

sure that I need to see you within the next 60 days or so. I know we had talked about an earlier status, but I'm happy to put it off a bit longer. If you would rather come back in 45, that's fine by me, but it seems like it might take that long for the defense to have a sense of what they're working with and be able to engage in some meaningful discussions.

MS. GLASHAUSSER: We're fine with approximately 60 days. We had discussed a date with your deputy of May 16th at 11:00, if that works for the Court.

THE COURT: That's fine. So, Mr. Grunwald, let me just explain to you something that you may be familiar with. But before someone's first appearance I always want to make sure they understand something called the Speedy Trial Act.

So this is the law that gives you the right to have a speedy and public trial within a certain amount of time as defined by federal law. Often your attorneys will find it helpful to do what's called exclude the time, or pause the clock, to give them more time to review discovery, investigate your defense, prepare mitigation in conjunction with their social workers, and negotiate, if you want to negotiate instead of having a trial, a possible resolution for you other than trial.

It is ultimately your right, though, to a speedy trial. I have the ability on my own and the authority on my own to make a determination that the circumstances exist that

justify pausing the clock or excluding the time, but if you have concerns about how long things are taking you can always make those known to me for me to consider.

Do you have any questions about that?

THE DEFENDANT: No.

THE COURT: Do I have an application from either party as to the exclusion of time?

MR. CHIAPPINI: Yes, Your Honor. The government would move for an order of excludable delay until May 16th at 11:00 a.m. so that the parties can review discovery and potentially engage in plea negotiations.

THE COURT: Any objection from the defense?

MS. GLASHAUSSER: No, Your Honor.

THE COURT: The application is granted. I'll exclude the time until May 16th in the interest of justice in light of the parties ongoing exchange and review of discovery in this case.

Mr. Grunwald, typically if you would like when people are in custody and they have family here I give you a chance to visit with your family for a few minutes, if you'd like to do so. You can't have any physical contact for security reasons, but your parents can come up and sit where the social worker is and you can sit on the bench with the marshals nearby. I know it's a lot easier than waiting at MDC for a visit, which can take a long time. If you'd like to do

that I'm happy to accommodate you.

MS. GLASHAUSSER:  Thank you, Your Honor.

THE COURT:  All right.  If there's nothing further, the marshals can bring Mr. Grunwald over.  Mr. and Mrs. Grunwald, you can't come past the bar but you can sit in the front row there and visit with him.  Thank you for being here today.  Thank you, everyone.  We're adjourned.

MR. CHIAPPINI:  Thank you, Your Honor.

(Proceedings concluded at 10:31 a.m.)

- - - - - - - - - - - - - - - - - -

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/S/ Nicole Sesta, RMR, CRR*
*Court Reporter/Transcriber*

*March 31, 2025*
*Date*

Nicole Sesta, RPR, RMR, CRR
Official Court Reporter